# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1714
Filed July 22, 2026

———————————

**Scott Rolenc,**
Plaintiff–Appellant,

v.

**Red Oak Diesel Clinic, Inc.,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Montgomery County,
The Honorable Craig M. Dreismeier, Judge.

———————————

**AFFIRMED**

———————————

Keith A. Harvat of Houghton Bradford Whitted PC, LLO, Omaha,
Nebraska, attorney for appellant.

Jordan T. Glaser and Brody D. Swanson of Peters Law Firm, P.C., Council
Bluffs, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., Buller, J., and Vogel, S.J.
Opinion by Vogel, S.J.

1

**VOGEL, Senior Judge.**

Scott Rolenc, claiming he was entitled to payment for work he did at his family's business, brought claims against the business for unpaid wages, liquidated damages, unjust enrichment, and quantum meruit. The district court granted summary judgment in favor of the business, concluding that Scott failed to show the existence of any promise or agreement that would entitle him to damages. Scott appeals. We conclude Scott failed to generate a genuine issue of material fact for trial on any of his claims. We therefore affirm.

## I. Background Facts and Proceedings.

For over forty years, Ronald and Judith Rolenc, husband and wife, owned Red Oak Diesel Clinic, Inc. (RODC). In accordance with a 1993 stock-purchase agreement (SPA), RODC had three shareholders: Ronald, Judith, and one of their sons, Scott. Ronald and Judith equally held the majority of the stock.

Scott worked for RODC over the years, and prior to 2003, was paid a wage for his work. After that, according to Scott, his parents promised that RODC "would be passed along to the boys that were going to stay there and work for it." Scott alleges that part of the agreement was that he needed to work at RODC for a low or no wage, which he claims he did from 2003 until 2017. Because Scott was the last Rolenc son working at RODC, he assumed the business would be "all [his]." RODC denies that any such agreement existed, and disputes whether Scott worked at RODC after 2003. It is undisputed there is no written agreement confirming the alleged succession plan.

In March 2016, Ronald and Judith retired. According to information provided from a prior lawsuit, one of Scott's brothers, Stan Rolenc, was to be named president of RODC,[1] and Scott the secretary.[2] Ronald and Judith intended for Stan to receive fifty-one percent of the company stock and for Scott to receive the other forty-nine percent. To reach the designated percentages, Ronald and Judith planned to gift their stocks to Stan and Scott, but the stock transfers never occurred. Ronald died in November 2016.

On July 28, 2017, RODC sent Scott a notice of termination of employment. Around this same time, Scott filed a lawsuit, CVCV021654, asking the district court to determine ownership of RODC under the terms of the SPA. In that lawsuit, the court determined that, based on the language of the SPA, due to Ronald's death and Scott's termination, Judith was the sole shareholder of the company. The court concluded that Scott should be compensated for the value of his shares.

In July 2019, Scott filed the current petition against RODC, which he amended in March 2021, bringing claims for (1) unpaid wages, (2) liquidated damages, (3) unjust enrichment, and (4) quantum meruit. RODC filed an answer, denying Scott's claims. The parties engaged in discovery over the next few years. Trial was set for September 2025.

In July 2025, RODC filed a motion for summary judgment claiming that Scott did not present evidence beyond mere speculation to support his

[1] The Rolencs' other son, Steve, is not involved in this lawsuit.

[2] To assist with evaluating RODC's motion for summary judgment in the present case, the district court, with the parties' consent, took judicial notice of the final order resolving the issues in a separate lawsuit involving Scott and RODC, Montgomery County Case No. CVCV021654. The judicially noticed order from that case refers to RODC's March 31, 2016 board of directors' meeting, reflecting this information.

claims, particularly regarding his claimed damages, and his claims therefore failed as a matter of law. Scott resisted.

The district court set the matter for a hearing, which was not reported. In August, the district court granted RODC's motion, concluding that Scott presented insufficient evidence to show that any promise or agreement existed that would entitle him to relief. The court "decline[d] to rule upon any other issue associated with damages."

Scott filed a motion to reconsider, enlarge, or amend the summary judgment ruling. The court rejected Scott's argument that it had misplaced the burden of proof and made a premature decision. It then modified its original ruling by providing additional clarification about its reasons for granting summary judgment to RODC and dismissing Scott's petition. Scott appeals.

## II. Standard of Review and Summary Judgment Standard.

We review the district court's summary judgment ruling for the correction of legal error. *Hagenow v. Am. Fam. Mut. Ins.*, 846 N.W.2d 373, 376 (Iowa 2014). Viewing the evidence in the light most favorable to the nonmoving party, "summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (cleaned up).

As our rules of civil procedure provide, when the moving party properly supports its summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials in the pleadings." Iowa R. Civ. P. 1.981(5). Instead, the nonmoving party "must set forth specific facts

showing that there is a genuine issue for trial." *Id.* If the nonmoving party is unable to do so, "summary judgment, if appropriate, shall be entered." *Id.*

The purpose of requiring the resisting party "to go beyond generalities" and put forth specific evidence supporting their claims is "to weed out paper cases . . . in order to make way for litigation which does have something to it." *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 808 (Iowa 2019) (cleaned up). Put plainly: "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Id.* (cleaned up).

## III. Analysis.

Scott's amended petition brought claims for unpaid wages,[3] liquidated damages under Iowa Code section 91A.8,[4] quantum meruit,[5] and unjust

---

[3] Under Iowa law, an employer is required to "pay all wages due its employees." Iowa Code § 91A.3(1) (2019). An "employee" includes "a natural person who is employed in this state for wages by an employer." *Id.* § 91A.2(3). "Wages" consist of "compensation owed by an employer," including compensation for "[l]abor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation." *Id.* § 91A.2(7)(a).

[4] Liquidated damages are available in unpaid wage cases when "an employer has intentionally failed to pay an employee wages." Iowa Code § 91A.8.

[5] Quantum meruit claims seek damages "for the reasonable value of the services provided and the market value of the materials furnished." *See K & L Landscape & Const. Inc. v. Dakota Contractors, Inc.*, No. 03-0676, 2004 WL 2296504, at *3 (Iowa Ct. App. Oct. 14, 2004) (citation omitted).

enrichment.[6]  In the summary judgment ruling, the court concluded that Scott had not presented evidence of the "promises" made, which would include "necessary terms and conditions" of an agreement addressing "his employment with the company, the work he would perform, the hours he would work, [and] the method of calculating his rate of pay."  Similarly, both before the district court and on appeal, RODC asserts that Scott failed to provide sufficient evidence regarding (1) any work he did for RODC after 2003 and (2) any damages he sustained.  As RODC notes in its appellate briefing, "The record is devoid of testimony or other relevant evidence that would allow a jury to reasonably ascertain Scott's damages or conclude that he performed any meaningful service to RODC in the relevant time period." We agree.

At the core of all of Scott's claims is the allegation that he performed services for RODC for which he is entitled to compensation.  It was therefore Scott's burden to provide evidence to support his claims regarding the work he performed and establishing its value.  Scott failed on both accounts.

1.  *Services provided.*  Regarding the services provided, Scott claimed his work at RODC from 2013 to 2017 consisted of "rebuilding pumps, injection systems and nozzles."  Scott testified that he worked on RODC's "exchange diesel program" and that he "would work nights, weekends, other times."  Scott testified that by 2016, he was working "probably 20 hours, maybe, a week."

Beyond his own assertions, however, Scott provided little to no detail about what work, if any, he did at RODC, or evidence that would support his

---

[6] Unjust enrichment claims require a plaintiff to show, in part, that he conferred a benefit upon the opposing party to his own detriment.  *See Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000).

claim. Scott stated that his day planners and RODC's profit and loss statements would show the work he did, and that his parents "may have some documents," but he did not submit those documents to support his resistance to the summary judgment motion. Instead, Scott claimed that those documents were all in RODC's possession. RODC contended that it only had Scott's day planners from 2000 and earlier and that those records had been available for Scott and his counsel to review and inspect since the summer of 2024. Scott does not explain why he did not utilize discovery mechanisms to compel RODC to produce the documents he alleges would support his claims. *See* Iowa Rs. Civ. P. 1.501 (discovery methods), 1.517 (consequences of failure to make disclosures or discovery).

Based on the foregoing, a jury would be unable to determine with any reasonable certainty what services Scott performed or how often he performed them for a period of over a decade. The jury would be left to speculate, which is insufficient to raise a genuine issue of material fact for trial. *See Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005) ("Speculation is not sufficient to generate a genuine issue of fact."); *see also McIlravy v. N. River Ins.*, 653 N.W.2d 323, 328 (Iowa 2002) ("An inference is legitimate if it is rational, reasonable, and otherwise permissible under the governing substantive law. On the other hand, an inference is not legitimate if it is based upon speculation or conjecture." (cleaned up)). For that reason, Scott has failed to generate a genuine issue of material fact regarding whether he performed services for RODC. While that conclusion is dispositive of his claims, we nevertheless address his claim for damages.

2. *Damages.* Regarding damages, Scott testified at his deposition that from 2003 to 2015 he was owed between $30,000 and $50,000 per year for

the work he did at RODC.  Scott calculated that number based on the following:

> So when we rebuilt diesel injection pumps, I kept logs of all the pumps that I had rebuilt in a daily planner.  And off of that, whatever the labor and the parts that were sold, minus the—our cost on that, would be our profit figure for [RODC].  I averaged anywhere between a 66 and a 74 percent profit margin on all my products that I produced at [RODC] in rebuilding.  Off of that, I would receive 50 percent of what the gross profit was on that product that I rebuilt.

From 2016 until his termination, Scott argued he is owed $60,000 per year, which he alleges was the salary RODC set for both Stan and Scott.  Alternatively, Scott argues that the jury could base his salary off Stan's salary after he took over as president of RODC.  Scott does not provide any other evidence regarding the value of the services he claims he provided to RODC, despite claiming that his day planners "would be a great help," and that RODC's "books" would show the amount of income he brought in.

Courts differentiate "between proof of the fact that damages have been sustained and proof of the amount of those damages." *Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011) (citation omitted).  Damages are recoverable when "there is proof of a reasonable basis from which the amount can be inferred or approximated."  *Id.* (citation omitted).  Damages are not recoverable when it "is speculative and uncertain whether damages have been sustained."  *Id.*  "Thus, some speculation on the amount of damages sustained is acceptable; however, overly speculative damages cannot be recovered." *Id.*

For the damages claimed from 2003–15, even if Scott could show that his calculation was a reasonable basis from which the amount of damages could be inferred, because he failed to generate a genuine issue of material

fact regarding the services he performed, the jury would have no way of knowing how many diesel injection pumps he had rebuilt in order to calculate the damage award. Regarding his claim for damages for 2016–17, Scott cannot show that $60,000 was an agreed-upon salary he was to receive, nor can he show that it is the reasonable value of the services he claimed he provided. For those reasons, his claim for damages, untethered to work performed, is too speculative to submit to a jury and is insufficient to raise a genuine issue of material fact for trial.

## IV. Conclusion.

Scott did not present evidence sufficient to generate a genuine issue of material fact for trial on any of his claims. For that reason, we affirm the district court's grant of summary judgment in favor of RODC.

**AFFIRMED.**